1

2

3

4

5

6

7

8

9

10

```
                              FILED
                CLERK, U S  DISTRICT COURT

                      JUN 1 5 2001

               CENTRAL DISTRICT OF CALIFORNIA
               BY                        DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

11

12  SOBOBA BAND OF MISSION INDIANS,
    a federally recognized Indian tribe,

13                 Plaintiff,

14                    v.

15

16  METROPOLITAN WATER DISTRICT OF
    SOUTHERN CALIFORNIA, a California
17  metropolitan water district,

18                 Defendant.

19

**NO. CV 00-04208 (GAF)(MANx)**

**ORDER RE: PLAINTIFF'S MOTION TO STRIKE**

```
   ENTERED ON ICMS

      JUN 1 8 2001

   CV            BG
```

20

21

## I.

## INTRODUCTION AND SUMMARY

22

23      On April 20, 2000, the Soboba Band of Mission Indians ("Plaintiff") filed a

24  Complaint for Equitable Relief and Damages against the Metropolitan Water District of

25  Southern California ("Defendant"). The Complaint alleges that Defendant constructed a

26  tunnel through the San Jacinto Mountains ("the Tunnel"), which intersected

27  underground faults that fed groundwater to their reservation in Riverside County.

28  Plaintiff contends that the water which would have flowed to the reservation, is now

being diverted into the Tunnel, where it is subsequently sold to Defendant's customers.

*According to Plaintiff, Defendant's use of the Tunnel has depleted its water supply and,*

1    among other things, rendered "historically irrigated lands unproductive."  Plaintiff prays
2    for damages, an injunction and restitution.

3         In response, Defendant filed an extensive Motion to Dismiss, which the Court
4    denied in its entirety on March 26, 2001.  Defendant then filed an Answer to the
5    Complaint which included 24 affirmative defenses, and a Third Party Complaint for
6    Express Indemnity, Equitable Indemnity and Declaratory Relief against Eastern and
7    Lake Hemet Municipal Water Districts.

8         Plaintiff moves to strike portions of the Answer and all 24 affirmative defenses.
9    Because the complaint is simply stated and potentially supports a variety of legal
10   theories of recovery, many of the affirmative defenses *may* prove viable depending on
11   what information the parties develop in discovery.  As to those affirmative defenses, the
12   motion is **DENIED** as the Court explains in the text of this order.  However, a number of
13   the allegations and defenses are capable of being addressed, given the record that has
14   been developed in the pleadings submitted in connection with the Motion to Dismiss,
15   and the present motion.  Because that record establishes that a number of the
16   allegations and affirmative defenses are either improperly pled or are not meritorious as
17   a matter of law, the Court **GRANTS** the motion in part.

18                                        II.

19                                   **ANALYSIS**

20   **A. STANDARD OF REVIEW FOR MOTIONS TO STRIKE**

21        Upon motion or the Court's own initiative, a "court may order stricken from any
22   pleading any insufficient defense, or any redundant, immaterial, impertinent, or
23   scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike generally serve two
24   functions.  First, a motion to strike provides an early challenge to the legal sufficiency of
25   the defense.  See California v. United States, 512 F. Supp. 36, 38 (N.D. Cal. 1981).
26   Second, it allows the parties to avoid the expenditure of time and money that must arise
27   from litigating immaterial or impertinent matters by dispensing with those issues prior to
28   trial.  Sidney-Vinstein v. A.H. Robbins Co., 697 F.2d 880, 885 (9th Cir. 1983).

1    "Immaterial matter is that which has no essential or important relationship to the claim

2    for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527

3    (9th Cir. 1993)(overruled on other grounds).  Similarly, "impertinent matter" consists of

4    statements that do not pertain, and are not necessary, to the issues in question.  Id.

5    While motions to strike are generally disfavored because they often serve only to delay,

6    see Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000), where they

7    "remove unnecessary clutter from the case, they serve to expedite, not delay."  Heller

8    Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (9th Cir. 1989).

9    However, before a motion to strike can be granted, "the Court must be convinced that

10   there are no questions of fact, and the questions of law are clear and not in dispute."

11   See SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995); Schwartzer, et al.,

12   FEDERAL PROCEDURE BEFORE TRIAL, § 9:381 (2001).

13   **B.  THE STIPULATIONS BETWEEN THE PARTIES**

14          Since the filing of this motion, Defendant has stipulated to eliminate certain

15   disputed pleadings.  Specifically, Defendant agreed to eliminate the nineteenth and

16   twenty-first paragraphs of the Answer, as well as the third paragraph of the Prayer.

17   (See Notice of Amended Motion to Strike, p. 3).  Moreover, Defendant has stipulated to

18   eliminate the Third, Fourth, Eighth, Sixteenth, and Twenty-Fourth Affirmative Defenses.

19   (Id.)(See also Plaintiff's Reply Brief, ("Reply"), p. 9).  Accordingly, the following

20   pleadings are **ORDERED STRICKEN FROM THE ANSWER** pursuant to the stipulation

21   between the parties: 1) Defendant's denial that it operated the Tunnel "under color of

22   law;" 2) Defendant's denial that Plaintiff is a "person" for purposes of  42 U.S.C. § 1983;

23   3) Defendant's request for attorney's fees; and 4) the Third, Fourth, Eighth, Sixteenth,

24   and Twenty-Fourth Affirmative Defenses.

25   **C. CONTESTED PLEADINGS IN THE ANSWER**

26          **1. Financial Benefit as a Result of the Leak**

27          In paragraphs 1, 13, 15 and 27 of the Answer, Defendant denies that it has

28   benefitted financially from the Tunnel leakage.  (See Answer, ¶¶ 1, 13, 15, and 27).  In

the Motion to Strike, Plaintiff argues that Defendant has affirmatively alleged that since 1951, it has credited the Eastern Municipal Water District ("Eastern" or EMWD") "for the full amount of the Tunnel seepage" in exchange for Eastern agreeing to indemnify Defendant for any injuries allegedly caused by the leaking Tunnel. (See Memorandum of Points and Authorities, ("Memo.") at pp. 2-3). Plaintiff claims that because Defendant has admitted that it receives indemnity in exchange for the Tunnel leakage, its denial of such financial benefit bears "no essential or important relationship to the claim for relief or the defenses being pleaded." (Id.)

Defendant however, contends that the allegations made in its Answer and Third Party Complaint are not inconsistent with its assertion that it has not benefitted financially from the water. (See Opposition Brief ("Opp.") p. 7). Defendant explains the arrangement with Eastern as follows:

> During the 1930's and 1940's, various people living in the vicinity of the Tunnel asserted claims against [Defendant] alleging that the Tunnel seepage had interfered with their water resources. One group of local residents formed the San Jacinto River Conservation District to jointly address the Tunnel seepage issue with Metropolitan. In 1951, after lengthy negotiations with local interests, [Defendant] agreed to annex the local area into its service area as a means of resolving [Defendant's] potential Tunnel-related liabilities. The terms of the annexation required [Defendant] annually to credit water users in the local area for the entire amount of Tunnel seepage. It also provided the local area with access to a larger and more reliable source of water from [Defendant] than it otherwise had available from local sources. The entity created to operate the water distribution system in the annexed area was EMWD. In exchange for the benefits of annexation and in return for the Tunnel seepage to EMWD, EMWD was required to defend and indemnify [Defendant] for any claim seeking recovery for loss or injury as a consequence of Tunnel seepage.

(See Third Party Complaint ("TPC") pp. 3-4).

Although at first blush it appeared as if the arrangement between Defendant and Eastern was a simple quid pro quo, and that Defendant was financially benefitting from the water, Defendant's recitation of the facts suggest that the exchange is actually part of a larger, more complicated transaction. After discovery, the evidence could demonstrate that when the credits issued to local residents and the geographic

expansion of services are accounted for, Defendant does not receive a financial benefit from the diverted water.  Thus, as there appear to be factual issues surrounding whether Defendant financially benefits from the water, it is inappropriate to strike paragraphs one, thirteen, fifteen, and twenty-seven from the Answer at this time.  Accordingly, Plaintiff's Motion to strike is **DENIED** as to these pleadings.

### 2. Defendant's Interpretation of the Court's Prior Ruling

Plaintiff attacks the pleadings in paragraphs 20 and 25 of the Answer, which correspond to Plaintiff's first (Section 1983) and second (federal common law) causes of action.  In Paragraphs 20 and 25 of the Answer, Defendant claims that the Court determined that the federally-protected right referred to in both of Plaintiff's causes of action, is the Winters reserved water right.  (See Answer, p. 5-6).

Plaintiff argues that Defendant has misinterpreted the Court's order.  (Id.) Plaintiff claims that the Court held only that Plaintiff states a claim for reserved water rights, not that the federally-protected rights referenced in Plaintiff's Complaint are Winters reserved water rights.  (Id.)  Defendant however, contends that paragraphs 20 and 25 are accurate, material, and help frame the issues of this case.  (See Opp. p. 8). Defendant points out that as a general policy, allegations supplying the background or historical material should not be stricken unless such allegations are unduly prejudicial to the moving party.  (Id.)  According to Defendant, the Answer makes clear that the Court has defined Plaintiff's complaint as asserting causes of action for infringement of a Winters reserved right.  (Id.)

The disagreement regarding the scope of the Court's Order stems from comments made during the hearing, wherein the following discussion ensued:

***

Mr. Dragna: Understood, Your Honor. The first cause of action, however, since it was not characterized in the complaint, the Court has appropriately characterized that as a Winters water right cause of action?

The Court: That is how I see it, that is correct.

Mr. Dragna: And we agree with the Court's evaluation.  That was not clear from the terms of the complaint.  The same thing with the 1983 cause of

- 5 -

1  action,[1] that is a 1983 cause of action that attaches to the federally-
2  protected right, the basis of which is the <u>Winters</u> water right?

3  The Court: Well, I believe so.

4  Mr. Dragna: That would be our understanding as well.

5  The Court: If that's the case, why couldn't this be resolved and clarified without
6  the extensive briefing? If that's all you want, is that something that was incapable
   of determination with the other side?
7
8  Mr. Dragna: Well, Your Honor, I think there was a dispute as to whether
   this was an underlying water rights case.
9
   The Court: Let me hear from Plaintiff on that.
10
   Mr. Dragna: If I may make one final point before we pass?
11
12  The Court: I want to hear from the Plaintiff on that and then you can raise
    whatever you want at that point. What Counsel has just said is my
13  understanding of what you are asserting. Am I correct about that?

14  Mr. Johnson: Your Honor, you are not incorrect.

15  ***

16 (<u>See</u> Nugent Dec., Ex. A, Transcript, pp. 9-11). Based on this discourse, Defendant
17 claims that the Court defined both the Section 1983 and federal common law claim, as
18 asserting infringement of a federally protected <u>Winters</u> right.
19      Despite the conversation at the hearing, the Court never ruled on which, as
20 between the Section 1983 cause of action or the federal common law claim, alleged a
21 violation of Plaintiff's reserved water rights. The Court adjudicated only the issues
22 presented by Defendant's Motion to Dismiss, and nothing more. Plaintiff's Counsel's
23 statement in response to the Court's inquiry does not carry the day for Defendant on
24 this issue. Plaintiff's Counsel stated "Your Honor, you are not incorrect" in response to
25 the Court's question: "What Counsel has just said is my understanding of what you are
26 asserting; am I correct about that?" This response however, followed a discussion
27 involving two causes of action--a discussion that was muddled by Defense Counsel's
28
_____
[1]Interestingly, the first cause of action is the Section 1983 claim. The second alleges a violation of federally protected Indian trust assets. (<u>See</u> Compl. ¶¶ 18-23).

- 6 -

references to both "the first cause of action," and "the Section 1983 cause of action," as if they were different claims, when in reality, they are the same.

In sum, the Court is unconvinced by Defendant's use of the hearing transcript to obtain a ruling on an issue which was neither adequately briefed, nor properly before the Court. The Court held that Plaintiff stated a claim for reserved water rights because those rights applied to groundwater; the Court never ruled on which cause of action alleged the violation of Plaintiff's <u>Winters</u> rights. Therefore, Plaintiff's Motion to Strike the language of paragraphs 20 and 25, relating to the Court's alleged determination that the federally-protected right referred to in both causes of action is a reserved water right as defined by the <u>Winters</u> doctrine, is **GRANTED**. The offending language is **ORDERED STRICKEN FROM THE ANSWER.**

Finally, the Court notes that the complaint meets the requirements of Rule 8, in that it contains "a short plain statement of the of the claim showing that the pleader is entitled to relief" and a demand for damages, an injunction and restitution. Given the nature of the claim – that Defendant has interfered with and misappropriated groundwater to which Plaintiff claims entitlement – any number of legal theories may support a judgment in favor of the plaintiff if the factual allegations are proven true. Precisely what legal theories are presented at trial cannot be determined until discovery is complete and the pre-trial conference has been conducted. Until then, efforts to foreclose avenues of recovery by quizzing the Court and then interpreting the Court's remarks to suit counsel's purposes should be abandoned. Likewise, because Plaintiff pleads its case broadly – which it may do under Rule 8 – Plaintiff cannot bar Defendant from raising affirmative defense which may be appropriate depending on the theories Plaintiff ultimately pursues. It is with these principles in mind, that the Court addresses Plaintiff's challenges to the affirmative defenses.

## D. THE CHALLENGED AFFIRMATIVE DEFENSES

Plaintiff challenges all 24 of the affirmative defenses raised in the Answer. These affirmative defenses are addressed in the order in which Plaintiff challenged them in the Motion to Strike.

### 1. Affirmative Defenses Which The Court has Allegedly Already Ruled On

Plaintiff argues that Defendant's First, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Eighteenth and Twentieth affirmative defenses--"Failure to State a Cause

1  suffered no damage, or that someone else caused those damages, without pleading an
2  affirmative defense.  The Motion to Strike is **GRANTED**, and the Fifth Affirmative
3  Defense is **ORDERED STRICKEN FROM THE ANSWER**.

### b. Failure to Mitigate Damages (7)

Defendant's Seventh Affirmative Defense states:

> If [Plaintiff] had suffered any damages, which [Defendant] expressly
> denies, [Defendant] alleges that [Plaintiff's] recovery for those damages is
> barred by its failure to mitigate, reduce, or otherwise avoid its damages.

(See Answer, p. 7).

Defendant argues that Plaintiff has been aware of its alleged rights for six decades, but has chosen to neglect those rights.  (See Opp. p. 18).  Furthermore, Defendant argues that Plaintiff failed to take steps to secure its Winters rights from available sources in the Basin.  (Id.)  According to Defendant, "[t]here is little doubt that [Plaintiff] could have extracted sufficient groundwater from the Basin to fulfill the needs of its Reservation."  (Id.)  Plaintiff however, contends that this defense is essentially a delay-based, laches defense.  Plaintiff argues that permitting such a defense would be as inconsistent with federal policy as entertaining the defense of laches itself.

As noted above, the Supreme Court has recognized that use of "state law time bars...do not apply with their same force to Indian land title claims."  Oneida 470 U.S. at 241, fn. 13.  The Ninth Circuit has also recognized a federal policy against the invocation of state law delay-based defenses to defeat Indian land rights.  See Swim v. Bergland, 969 F.2d 712, 718 (9th Cir. 1983)("Laches or estoppel is not available to defeat Indian treaty rights, even where the Indians have long acquiesced in use by others of affected lands...."); United States v. Southern Pac. Trans. Co., 543 F.2d 626, 699 (9th Cir. 1976)("[a]lthough it may appear harsh to condemn an apparently good-faith use as a trespass after 90 years of acquiescence by the owners, we conclude that an even older policy of Indian law compels this result.").  To the extent Defendant's failure to mitigate defense is premised upon Plaintiff's delay in bringing the present lawsuit, it is legally insufficient.  However, Defendant has proffered an additional basis for asserting that Plaintiff failed to mitigate damages.  Defendant argues that alternative water sources were available to Plaintiff, and had Plaintiff used these alternative resources, the needs of the Reservation would have been satisfied.  This is a legitimate affirmative defense.

1    **c. Right of Offset (9)**[3]

2    Plaintiff's Ninth Affirmative Defense _originally_ provided:

3    If [Plaintiff] is held entitled to recover costs or damages against
     [Defendant], which entitlement [Defendant] denies, such recovery must be
4    reduced by any and all amounts previously obtained by [Plaintiff], whether
     by direct payment, offset or otherwise, for the alleged interference with
5    [Plaintiff's] _Winters_ right, including, but not limited to, the $12 million paid to
     Plaintiff by the United States.
6

7    Defendant points out that Eastern and Lake Hemet Municipal Water Districts

8    have already been joined, and other parties may also need to be joined "to determine

9    the scope and sources of Plaintiff's _Winters_ right." (See Opp. p. 17). According to

10   Defendant, to the extent the present third parties or future parties pay compensation to

     Plaintiff, Defendant would, as a matter of law, be entitled to a right of offset for those
11
     recoveries. (Id.) Plaintiff however, argues that Defendant does not suggest that any
12
     other party might be partially responsible for injuries to the Reservation caused by the
13   Tunnel. (See Reply, p. 7). Moreover, Plaintiff notes that it has not sued any other parties

14   for any other interference with Plaintiff's water rights, and even if it did, any payments

15   received would be for different injuries than those caused by Defendant's Tunnel. (Id.)

16   Given the facts of this case, it is plausible that discovery could reveal facts

17   indicating that Defendant and Eastern, or Lake Hemet Municipal Water District ("Lake

     Hemet"), were collectively responsible for the operation or maintenance of the Tunnel.
18
     Under such circumstances, if either third-party defendant paid compensation to Plaintiff,
19
     Defendant could be entitled to an offset of damages. Thus, because a right of offset is
20   still possible under the facts of this case, Plaintiff's Motion to Strike the Ninth Affirmative

21   Defense is **DENIED**.

22   **d. Reasonable and Good Faith Effort (17)**

23   The Seventeenth Affirmative Defense states:

24   The alleged acts or omissions of [Defendant] were at all times relevant to
     the Complaint reasonable and in good faith.
25

26   (See Answer, p. 9).

27   ───────────────────
         [3]The parties have stipulated to amend the Ninth Affirmative Defense. (See Amended Notice of Motion
     to Strike, p. 3). The text of the original Ninth Affirmative Defense is cited here. Defendant has agreed to
28   modify the Ninth Affirmative Defense by striking "previously" as well as "including, but not limited to, the $12
     million paid to Plaintiff by the United States." (Id.)

1   Defendant argues that this affirmative defense is consistent with the Complaint,

2   because Section 1983 "must be read in harmony with the general principals of tort

3   immunities and defenses...." (See Opp. p. 16). Defendant claims that notions of

4   reasonableness and good faith are equally applicable to a Section 1983 claim as in

    ordinary tort law. (Id.)(quoting Imbler v. Pachtman, 424 U.S. 409 (1976).

5   Plaintiff contends that Defendant is raising a negligence defense against a claim

6   sounding in intentional tort. (See Memo. p. 8). Plaintiff reiterates that the only

7   affirmative defenses to intentional torts in general, and trespass in particular, are

8   consent and privilege. (Id.)

9   Defendant's argument is unpersuasive. Imbler v. Pachtman addresses questions

10  relating to absolute prosecutorial immunity in Section 1983 cases involving constitutional

11  torts. Similarly, a reasonable and good faith belief in the constitutionality of one's

12  actions gives rise to a qualified immunity defense in cases involving alleged

    constitutional torts. These cases have no bearing on the issues before this Court, and

13  these immunity defenses do not come into play in this water rights case. Accordingly,

14  Plaintiff's Motion to Strike is **GRANTED**, and the Seventeenth Affirmative Defense is

15  **ORDERED STRICKEN FROM THE ANSWER**.

16      **e. Fair and Reasonable Use (19)**

17      Defendant's Nineteenth Affirmative Defense states:

18      [Defendant's] allege (sic) interference with [Plaintiff's] reserved water rights
        as defined by the Winters doctrine constitutes a permissible and
19      reasonable use of waters then unappropriated by [Plaintiff].

20  (See Answer, p. 10).

21

22  Defendant argues that under California law, unused waters are subject to fair and

23  reasonable appropriation by junior users. (See Opp. p. 16). Moreover, Defendant

    claims that Plaintiff never used its full Winters right entitlement, and that Defendant was

24  free to appropriate that unused portion for fair and reasonable uses. Defendant poses

25  the following hypothetical: if Plaintiff had a Winters right of 5,000 acre feet per year, but

26  used only 2,000 acre feet per year of its right, the remaining 3,000 acre feet per year

27  would be available under applicable California law for fair and reasonable use by the

28  others. (Id.)

1    Plaintiff claims that while it is true that under California law, unused surface water

2  is subject to appropriation by junior users, the law is "dramatically different for ground

3  water." (See Reply, p. 8). The law in governing groundwater is that a landowner's use

4  of water underlying his property is correlative with the use of adjoining landowners, and
   is limited by the maxim that "one must so use his own as not to injure another."
5
   (Id.)(citing O'Leary v. Herbert, 5 Cal. 2d 416 (1936)). Thus, Plaintiff argues that even if
6
   Defendant owned the land occupied by the Tunnel and thus had a right to use the
7  leakage under California law, fair and reasonable use would not constitute a defense to

8  Plaintiff's claims.

9    Plaintiff is correct to the extent that it argues that use of underlying percolating

10 waters is governed by the doctrine of correlative rights and reasonable use, as set forth

11 by Katz v. Walkinshaw, 141 Cal. 116 (1903). See also Revis v. I.S. Chapman & Co.,
   130 Cal. App. 109, 111 (1933)("[w]here two or more persons own different tracts of land,
12
   underlaid by porous material extending to and communicating with them all, which is
13
   saturated with water moving with more or less freedom therein, each has a common and
14
   correlative right to use of this water upon his land, to the full extent of his needs if the
15 common supply is sufficient, and to the extent of a reasonable share thereof if the supply

16 is so scant that the use by one will affect the supply of others.").

17    In this case however, there is no evidence that the water appropriated by

18 Defendant constitutes "percolating water." Percolating waters, in the common-law sense

19 of the term, are "those that are vagrant, wandering drops moving by gravity in any and
   every direction along the line of least resistance." Los Angeles v. Hunter, 156 Cal. 603,
20
   607 (1909). The term does not include waters percolating only in the sense that they
21
   form a vast mass of water confined in a basin filled with detritus, always slowly moving
22
   downward to the outlet in conformity with the physical law to attain a uniform level. Id.
23 Thus, because there are unresolved issues of law and fact, Plaintiff's Motion to Strike

24 Defendant's Nineteenth Affirmative Defense is **DENIED**.

25 //

26 //

27 //
   //
28 //

## 3. Affirmative Defenses Which Plaintiff Claims Do Not Provide Fair Notice of the Defenses[4]

Plaintiff also attacks the Fifth, Seventh, Twenty-First, Twenty-Second and Twenty-Third Affirmative Defenses--"Acts or Omissions of Third Parties," "Failure to Mitigate Damages," "Waiver," "Estoppel," and "Unclean Hands." These Affirmative Defenses are addressed in turn.

### a. Acts or Omissions of Third Parties (5)

Defendant's Fifth Affirmative Defense states:

> The injuries Plaintiff claims to have sustained, if any, are in whole or in part, the proximate result of the acts or omissions of persons or entities other than Defendant or any person for whose acts or omissions Defendant is responsible.

(See Answer, p. 5).

Defendant argues that it believes third parties, including Eastern and Lake Hemet, are primarily responsible for any infringement of Plaintiff's Winters rights. (See Opp. p. 18). The facts underlying these suspicions, as Defendant points out, are set forth in Defendant's recently filed Third Party Complaint. (Id.) Plaintiff contends however, that it has not sued anyone for any infringement of its rights, except for Defendant, for injuries resulting solely from Defendant's Tunnel. (See Reply, p. 9). Plaintiff claims that there are no suggestions, either in this defense, or in the Third Party Complaint, that another party besides Defendant bears responsibility for the Tunnel. Therefore, Plaintiff concludes that anything that any other party might have done to invade Plaintiff's rights in any other respect is irrelevant. (Id.)

The Court agrees. Plaintiff is obligated to prove that Defendant caused the damages alleged in the complaint as part of its case-in-chief – that is, Defendant must prove that it suffered damages and that Defendant is the responsible party. Nothing could be more fundamental to the adversarial process. If Plaintiff fails in this endeavor, Defendant wins. By denying responsibility, Defendant may contend that Plaintiff

---

[4] In the Motion to Strike, Plaintiff argues that all of these affirmative defenses were insufficiently plead because they did not provide fair notice of the defenses asserted. (See Memo. p. 11). The Opposition clarified the affirmative defenses, and why Defendant believed the defenses were appropriate. In Reply, Plaintiff attacked the merits of Defendant's arguments. Therefore, while this section is titled "Affirmative Defenses that Provide no Fair Notice," the notice requirement is no longer at issue. The merits of the parties' arguments are considered here instead.

of Action," "Statute of Limitations," "Failure to Join an Indispensable Party," "Failure to Quantify <u>Winters</u> Right," "Adequate Water Available," "<u>Winters</u> Rights Not Applicable to Groundwater," "Adequate Water to Satisfy <u>Winters</u> Rights," and "Laches" respectively-- all repeat the various allegations that the Court rejected when it denied Defendant's Motion to Dismiss.  (<u>See</u> Memo. p. 7).  Because a defense eliminated on a previous motion is immaterial and subject to a motion to strike, Plaintiff claims that these affirmative defenses should be stricken.  (<u>Id</u>.)

### a. Failure to State a Cause of Action (1)

Defendant's First Affirmative Defense states:

> The Complaint and each purported cause of action in the Complaint fail to state facts sufficient to constitute a cause of actions against [Defendant] upon which relief can be granted.

(<u>See</u> Answer, p. 6).

Defendant contends that the Court's ruling on the Motion to Dismiss held only that Plaintiff adequately pled causes of action for a <u>Winters</u> reserved right and for infringement of a federally protected right under 42 U.S.C. § 1983.  (<u>See</u> Opp. p. 10). According to Defendant, the Court did not express an opinion as to "the validity of those claims."  (<u>Id</u>.)  Defendant claims that should the facts prove insufficient to support one or more of the Tribe's claims, Defendant's First Affirmative Defense will be triggered. (<u>Id</u>.)

Although an attack on the pleadings, courts have permitted parties to raise "failure to state a cause of action" as an affirmative defense.  <u>See e.g. Mendrala v. Crown Mrtg. Co.</u>, 1990 WL 60705, *3 (N.D. Ill. 1990)(finding that it is "well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer.").  In this case, two factors counsel against striking the First Affirmative Defense.  First, in holding that Plaintiff stated a cause of action for water rights under the <u>Winters</u> doctrine, the Court made no finding as to the substantive adequacy of Plaintiff's Section 1983 cause of action.  Moreover, Plaintiff appears to be alleging an intentional tort, similar to trespass; the Court never ruled on whether Plaintiff stated a cause of action under this theory of liability.  Thus, Plaintiff's Motion to Strike Defendant's First Affirmative Defense is **DENIED**.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. Statute of Limitations (10)

Defendant's Tenth Affirmative Defense states:

> The causes of action set forth in the [Plaintiff's] Complaint are barred by applicable statute of limitations.

(See Answer, p. 8).

Defendant argues that the Court's ruling does not conclusively hold that Plaintiff's claims are timely. (See Opp. p. 11). Rather, Defendant contends that the Court simply recognized that Plaintiff had plead facts sufficient to allege a continuing harm, capable of surviving a challenge to the pleadings. (Id.)

The Supreme Court has held that "[t]here is no statute of limitations governing federal common law actions by Indians to enforce property rights." Oneida, 470 U.S. at 240. However, the limitations period for Section 1983 lawsuits is that of the forum state's statute of limitations for personal injury torts. See Wilson v. Garcia, 471 U.S. 261, 276 (1985). In this case, the Court found that Plaintiff had plead sufficient facts to demonstrate a continuing offense on the Section 1983 cause of action. (See Order, p. 2). The Court explicitly recognized however, that it was not conclusively finding a continuing harm, but instead, determining only that the allegations were sufficient to establish continuing harm for pleading purposes. (See Nugent Dec., Ex. A, p. 18). The facts, as developed through the discovery process, could demonstrate that a continuing harm has not occurred, and the statute of limitations has expired on Plaintiff's Section 1983 cause of action. Therefore, the statute of limitations still constitutes a valid defense. Plaintiff's Motion to Strike is **DENIED** as it pertains to the Tenth Affirmative Defense.

### c. Failure to Join Indispensable Parties (11)

Defendant's Eleventh Affirmative Defense states:

> [Plaintiff] has failed to join indispensable parties in whose absence complete relief cannot be granted, warranting dismissal of [Plaintiff's] Complaint.

(See Answer, p. 8).

Defendant acknowledges that the Court held that the United States is not an indispensable party in the Motion to Dismiss Order. (See Opp. at p. 11). However, Defendant points out that the Court made no findings as to whether other parties, such

- 9 -

as "Basin users," may be indispensable to a determination of Plaintiff's water rights. (Id.) Defendant argues that any water appropriate to fulfill Plaintiff's water rights necessarily will impact the rights of others in the basin and therefore, it may be necessary to bring others in to resolve Plaintiff's <u>Winters</u> right claim. (Id.) In the Reply Brief however, Plaintiff contends that this argument is unpersuasive because Plaintiff has not asked that its <u>Winters</u> rights be fulfilled, but only that Metropolitan seal the Tunnel and compensate Plaintiff for its loss. (See Reply, p. 5).

Defendant is correct to the extent it argues that the Court held only that the United States was not an indispensable party to this action. Despite Plaintiff's contentions, there conceivably could be other parties in whose absence complete relief cannot be granted, or whose interest in the subject matter of the lawsuit could be adversely affected. For instance, a property owner who would suffer severe real estate damage if Defendant attempted to seal the Tunnel, might ultimately be determined to be indispensable to this action. Therefore, Plaintiff's Motion to Strike is **DENIED** as to the Eleventh Affirmative Defense.

### d. Failure to Quantify <u>Winters</u> Rights (12)

Defendant's Twelfth Affirmative Defense states:

> The Complaint, and each purported cause of action in the Complaint, fails to allege a quantifiable <u>Winters</u> right.

(See Answer, p. 8).

Defendant argues that the Court's holding in the Motion to Dismiss was limited to a finding that Plaintiff had plead a <u>Winters</u> right, and that it did not determine what detail Plaintiff would have to prove at trial to prevail on its claim. (See Memo. p. 12). Therefore, Defendant argues that Plaintiff's Motion to Strike is unsupported by the record and should be rejected. (Id.)

In denying Defendant's Motion to Dismiss, the Court stated that as a matter of pleading, Plaintiff is not required to state with specificity the amount of water allegedly diverted by MWD. (See Order, p. 2). The Court concluded that "the complaint meets the requirement of a short and plain statement of the claim showing an entitlement to relief." (Id.)(citing Fed. R. Civ. P. 8(a); <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Although Defendant is correct that the Court did not determine Plaintiff's burden of proof on the <u>Winters</u> right claim, Defendant's affirmative defense purportedly attacks

- 10 -

1  and controverts an element of the Plaintiff's case, as opposed to pleading new matter

2  that defeats Plaintiff's claim.  Therefore, Plaintiff's Motion to Strike is **GRANTED**, and

3  the Twelfth Affirmative Defense is **ORDERED STRICKEN FROM THE ANSWER**.

4      **e. Adequate Water Available (13)**

5      The Thirteenth Affirmative Defense states:

6        The Complaint, and each purported cause of action in the Complaint, fails
      to allege that unappropriated waters were, and presently are, inadequate

7        to satisfy [Plaintiff's] reasonable demands.

8  (See Answer, p. 9).

9      Defendant contends that this defense relates to, and potentially defeats Plaintiff's

10  claims for past injuries arising from interference with its <u>Winters</u> right.  (See Opp. p. 13).
According to Defendant, the right to use water, unlike real property, does not give the

11  owner the power to exclude others from appropriating unused portions of that right.

12  (Id.)  Defendant concludes that to the extent that the holder of a senior water right does

13  not make use of that right, persons with junior interests are free to appropriate the water

14  and put it to a beneficial use.  (Id.)

15      Again, instead of pleading new matter which defeats the Plaintiff's claim, the

16  Thirteenth Affirmative Defense controverts Plaintiff's case and therefore is not a proper

17  affirmative defense.  As noted above, given the leniency of the notice pleading
requirement, Plaintiff is under no obligation to plead that unappropriated waters were

18  insufficient to satisfy the purpose of the reservation.  Because the affirmative defense

19  does nothing more than attack the sufficiency of the pleading, Plaintiff's Motion to Strike

20  is **GRANTED**, and the Thirteenth Affirmative Defense is **ORDERED STRICKEN FROM**

21  **THE PLEADINGS**.

22      **f. <u>Winters</u> Right Does Not Apply to Ground Water (14)**

23      The Fourteenth Affirmative Defense states:

24        [Plaintiff's] <u>Winters</u> right applies exclusively to surface waters and does
      not extend to groundwater sources, such as groundwater seeping into the

25        Tunnel.

26  (See Answer, p. 9).

27      Despite acknowledging that the Court has already held that <u>Winters</u> rights are

28  applicable to groundwater, Defendant argues that the case law on this issue is still

- 11 -

developing and is therefore subject to uncertainty. (See Opp. p. 14). Defendant also claims that "the Supreme Court has yet to weigh in on this subject." (Id.)

Although the Winters doctrine, like all areas of law, develops with each new set of facts to which it is applied, it is not a new or uncertain area of emerging jurisprudence. In fact, Winters v. United States was decided in 1908. 207 U.S. 564, 576. Since that time, the Supreme Court *has* decided that the reserved rights doctrine applies to groundwater. See Cappaert, 426 U.S. at 143 (the Court noted that the reserved water rights were protected "whether the diversion is of surface or groundwater."). In light of this precedent, the Court rejected Defendant's argument when Defendant made it the first time--in support of the Motion to Dismiss. There is no reason to re-visit this issue now. Accordingly, Plaintiff's Motion to Strike is **GRANTED**, and the Fourteenth Affirmative Defense is **ORDERED STRICKEN FROM THE ANSWER**.

### g. Adequate Water to Satisfy Winters Right (18)

The Eighteenth Affirmative Defense states:

> [Plaintiff] has failed to allege any past use of water by [Defendant] that was subject to the Tribe's Winters rights, prevented [Plaintiff] from obtaining adequate water to fulfill the purpose of the Reservation.

(See Answer, p. 9).

Defendant argues that if sufficient water exists to fulfill the purpose of the Soboba Reservation, Plaintiff has no federally created right for additional water, and Plaintiff would be required to pursue non-federal rights in state court. (See Opp. p. 14).

In the Eighteenth Affirmative Defense, Defendant is once again challenging Plaintiff's pleading of the Winters reserved water right claim. As noted above, Fed. R. Civ. P. 8(a) requires Plaintiff provide only "a short and plain statement" of the claim showing that Plaintiff is entitled to relief. See Conley v. Gibson, 355 U.S. 41, 47 (1957)(Rule 8(a) requires a statement "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). In this case, Plaintiff alleged in the Complaint, that the water draining into the Tunnel has caused streams, wells, and historically productive fields to dry up. (See Compl. ¶ 14). Given these allegations, the Court finds that Plaintiff has complied with the dictates of Rule 8(a), and that Defendant has been put on notice of Plaintiff's claims. Therefore, Plaintiff's Motion

1   to Strike the Eighteenth Affirmative Defense is **GRANTED**. Accordingly, the Eighteenth

2   Affirmative Defense is **ORDERED STRICKEN FROM THE ANSWER**.

3           **h. Laches (20)**

4       The Twentieth Affirmative Defense states:

5       The Complaint and each purported cause of action asserted therein is
        barred by the doctrine of laches on account of [Plaintiff's] unreasonable
6       delay in commencing this action for over 75 years, which duly has caused
        prejudice to [Defendant].

7
    (See Answer, p. 10).
8
        Defendant concedes that laches cannot deprive Plaintiff of its substantive
9
    Winters right, but it can bar Plaintiff "to the extent that it seeks equitable relief in the
10
    form of restitution." (See Opp. p. 14). Defendant points out that there is no dispute but
11
    that Plaintiff has known of its alleged rights against Defendant for decades. (Id.) In
12
    light of Defendant's reliance upon that inaction, Defendant claims that it would be
13
    grossly inequitable to permit Plaintiff to obtain restitutionary relief. (Id. at p. 15).
14
        As previously noted, both the Supreme Court and the Ninth Circuit have
15
    repeatedly found that application of laches to Indian land claims is inconsistent with
16
    established federal policy. See e.g. County of Oneida v. Oneida Indian Nation of New
17
    York, 470 U.S. 226, 243, fn. 16 (1984)("as with borrowing of state statutes of limitations,
    the applications of laches would appear to inconsistent with established federal
18
    policy."); Swim v. Bergland, 696 F.2d 712, 718 (9th Cir. 1983)("[l]aches or estoppel is
19
    not available to defeat Indian treaty rights."). Defendant has not cited, nor has the
20
    Court found a single case where laches has been successfully invoked as a defense to
21
    an Indian land title case. As such, laches is insufficient as a matter if law. Accordingly,
22
    Plaintiff's Motion to Strike is **GRANTED**, and Defendant's Twentieth Affirmative
    Defense is **ORDERED STRICKEN FROM THE ANSWER**.
23
    **2. Affirmative Defenses Which "Cannot Succeed Under Any**
24
    **Circumstances"**
25
        Plaintiff argues that Defendant's Second, Sixth, Ninth, Seventeenth, and
26  Nineteenth Affirmative Defenses--"No Duty Owed to Plaintiff," "Comparative Fault,"
27  "Right of Offset," "Reasonable and Good Faith Effort," and "Fair and Reasonable Use"
28  respectively--should be stricken from the Answer because they are insufficient defenses

1  which cannot succeed under any circumstances. (See Memo. p. 8). These defenses
2  are addressed in turn.

### a. "No Duty Owed to Plaintiff" (2)

Defendant's Second Affirmative Defense states:

> [Defendant] owed no duty of care to [Plaintiff] and, at all times relevant to
> this lawsuit, has complied with applicable laws and regulations and has
> acted in a careful, reasonable, and prudent manner.

(See Answer, p. 7).

Plaintiff argues that it is alleging that Defendant committed a variation on
trespass--an intentional tort, and the Second Affirmative Defense is a negligence
defense. (See Memo. p. 8). Because consent and privilege are the only applicable
defenses to trespass, Plaintiff claims that Defendant's Second Affirmative Defense is
insufficient as a matter of law. (Id.) Defendant however, contends that Plaintiff does not
allege anywhere in the relevant provisions of the Complaint, that Defendant intentionally
infringed upon Plaintiff's water rights. (See Opp. at p. 15). Rather, Defendant points out
that the Complaint states that Defendant "knew or had reason to know" that its activities
would adversely affect Plaintiff. (Id.) Defendant concludes that because such an
allegation addressed a reasonableness standard, Plaintiff could be claiming that
Defendant negligently infringed upon Plaintiff's rights. (Id.)

Even assuming that Plaintiff is proceeding on a negligence cause of action, the
Second Affirmative Defense is part of the prima facie case of a negligence claim and
thus, not a valid affirmative defense. See Etienne v. Wal-Mart Stores, Inc., 197 F.R.D.
217, 220 (D.C. Conn. 2000)(holding that no duty is not an affirmative defense because
defendants do not bear the burden of establishing legal duties for plaintiff's negligence
claim, or lack thereof); Hadar v. Concordia Yacht Builders, Inc., 886 F.Supp. 1082, 1089
(S.D.N.Y. 1995) ("A defense is not an affirmative defense where it 'merely negates an
element of the plaintiff's prima facie case.' "). The burden of demonstrating duty falls
squarely upon Plaintiff, and a simple denial of the negligence allegation in the complaint
is sufficient to put the matter in issue. Thus, Plaintiff's Motion to Strike is **GRANTED** and
Defendant's Second Affirmative Defense is **ORDERED STRICKEN FROM THE
ANSWER**.

//

- 14 -

**b. Comparative Fault (6)**

Defendant's Sixth Affirmative Defense states:

> The damages complained of in the Complaint were caused by the
> [Plaintiff's] own negligent acts and/or omissions and, therefore, [Plaintiff's]
> recovery, if any, would be reduced on the basis of its comparative fault.

(See Answer, p. 7).

In response to Defendant's Sixth Affirmative Defense, Plaintiff reiterates that trespass is an intentional tort, and since this affirmative defense is based on negligence, it is insufficient as a matter of law. (See Memo. p. 8). Defendant however, argues that Plaintiff has not unequivocally alleged an intentional tort in its pleadings, and that negligence defenses are therefore appropriate. (See Opp. p. 15).

The Court agrees with Defendant on this issue. At this point, Plaintiff's intentional tort allegation is too ambiguous for the Court to determine conclusively that Plaintiff is alleging an intentional tort cause of action. Plaintiff does not allege trespass anywhere in the Complaint. Similarly, the Complaint does not cite, nor reference Cal. Water Code § 1051,[2] the provision which Plaintiff cites in support of the allegation that an action for trespass lies for unauthorized diversions of water. (See Memo. p. 8). Furthermore, it is unclear whether Section 1052--the provision which actually authorizes a claim for trespass against a party guilty of the unauthorized diversion or use of water--permits a private cause of action, and whether that section applies to diverted percolating groundwater. To further complicate the issue, Plaintiff's Complaint contains language indicating that Defendant's actions were unreasonable, which suggests that Plaintiff is asserting a negligence cause of action. (See Compl. ¶ 10)("[Defendant] knew or had reason to know prior to commencing construction of the Tunnel that it would adversely affect the Reservation's water resources"). For these reasons, the Court cannot conclude at this time, that Defendant's negligence-based affirmative defenses are inapplicable. Therefore, Plaintiff's Motion to Strike is **DENIED** as it pertains to the Sixth Affirmative Defense.

//

//

---

[2] Section 1051 covers the investigative powers of the State Water Resources Control Board. See Cal. Water Code §§ 1051, 1003.5.

- 15 -

1    Thus, in light of the foregoing considerations, Plaintiff's Motion to Strike the

2  Seventh Affirmative Defense is **DENIED**.  However, Defendant is prohibited from using

3  the defense to argue that Plaintiff unreasonably delayed in bringing this lawsuit.  Such

4  an argument is tantamount to a laches defense, which flies in the face of established

   federal policy.

5       **c.  Waiver (21) and Estoppel (22)**

6       Defendant's Twenty-First Affirmative Defense states:

7        [Plaintiff] has waived its rights to seek damages for its alleged past injuries
         on account of [Plaintiff's] unreasonable delay in commencing this action for
8        over 75 years.

9  (See Answer, p. 10).

10       Defendant's Twenty-Second Affirmative Defense states:

11       The damages complained of in the Complaint are barred by the doctrine of
         Equitable Estoppel.
12

13  (Id.)

14       Plaintiff argues that Defendant's Twenty-First and Twenty-Second Affirmative

15  Defenses are essentially delay-based, laches defenses.  (See Reply, p. 9).  According to

16  Plaintiff, permitting such defenses to be raised against claims of Indian tribes would be

17  as inconsistent with federal policy as entertaining the defense of laches.  (Id.)

    Defendant concedes that the defenses of waiver and estoppel are founded upon the
18
    same facts as Defendant's laches and failure to mitigate defenses.  (See Opp. p. 19).
19       These affirmative defenses clearly constitute state-law, delay-based defenses.

20  Because there is a strong federal policy against applying such time-bars to Indian land

21  title claims, these defenses are insufficient as a matter of law.  Therefore, Plaintiff's

22  Motion to Strike is **GRANTED**, and both the Twenty-First and Twenty-Second Affirmative

23  Defenses are **ORDERED STRICKEN FROM THE ANSWER**.

24       **d.  Unclean Hands (23)**

25       Defendant's Twenty-Third Affirmative Defense states:

         The Complaint, and each and every purported claim against [Defendant],
26       is barred by the doctrine of unclean hands in that [Plaintiff's] own actions or
         inactions have resulted in the alleged interference with their <u>Winters</u> rights.
27

28  (See Answer, p. 10).

Defendant argues that this defense is based upon Plaintiff's lack of good faith conduct in negotiating past settlements. (See Opp. p. 19). Defendant claims that it has committed substantial effort and resources toward resolving the claims asserted by Plaintiff. (Id.) According to Defendant, in early 1970, Defendant believed it had reached agreement with Plaintiff's negotiating team, only to have Plaintiff withdraw at the last minute. (Id.) Defendant concludes that Plaintiff's lack of good faith at the negotiating table, coupled with its "profound delay" in filing this action, have "sufficiently soiled the Tribe's hands so as to preclude it from obtaining any form of equitable relief against [Defendant]." (Id.)

Plaintiff argues that there is no support for the proposition that an unclean hands defense can be grounded upon past settlement negotiations. (See Reply, p. 10). Plaintiff points out that Defendant has alleged no wrongful behavior on Plaintiff's part that directly concerns the cause of action itself. (Id.) Moreover, Plaintiff claims that the evidence regarding past settlement negotiations is inadmissible under Fed. R. Evid. 408. (Id.)

The application of the unclean hands doctrine raises primarily a question of fact. See Dollar Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F. 2d 165, 173 (9th 1989). The doctrine bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted. See Pond v. Insurance Co. of North America, 151 Cal. App.3d 280, 289-90, (1984). "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." Dollar Systems, 890 F. 2d at 173 (quoting Arthur v. Davis, 126 Cal.App.3d 684, 693-94, (1981)). See also Murillo v. Rite Stuff Foods, Inc., 65 Cal. App. 4th 833, 844-45 (1998)("The misconduct ... must relate directly to the transaction concerning which complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants. Accordingly, relief is not denied because the plaintiff may have acted improperly in the past or because such prior misconduct may indirectly affect the problem before the court.").

In this case, Defendant invokes the doctrine of unclean hands to attack Plaintiff's conduct during settlement negotiations. Plaintiff's conduct in the negotiations however, occurred after the events giving rise to the Complaint occurred. Moreover, Plaintiff's

- 22 -

settlement-related conduct does not directly relate to the transaction which the Complaint was filed--the construction and opertation of the Tunnel, and the alleged misappropriation of groundwater.  Therefore, the defense is legally insufficient under the facts of this case.  Accordingly, Plaintiff's Motion to Strike is **GRANTED**, and the Twenty-Third Affirmative Defense is **ORDERED STRICKEN FROM THE ANSWER**.

### 4.  Defendant's Non-User Defense (15)

Defendant's Fifteenth Affirmative Defense states:

> [Defendant] presently transfers, and since 1951 has transferred, all Tunnel seepage water to EMWD and, therefore, does not use, or in any way unreasonably use, the Tunnel seepage water.

(See Answer, p. 9).

Plaintiff argues that by trading water for indemnity, as Defendant has alleged that it has done, it is using the water.  (See Reply, p. 11). Defendant contends that its defense that it is a non-user is not contradicted allegations contained in the in the Third Party Complaint against Eastern and Lake Hemet.  (See Opp. p. 20).  Defendant claims that it returns every drop of Tunnel seepage to Eastern for distribution among the Basin users.  (Id.)

After considering the arguments of the parties, the court concludes that the facts are not sufficiently developed at this time to determine conclusively whether Defendant "uses" the water that leaks into the Tunnel.  Therefore, Plaintiff's Motion to Strike is **DENIED** as it pertains to Defendant's Fifteenth Affirmative Defense.

//
//
//
//
//
//
//
//
//
//

- 23 -

## IV.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**. With respect to the pleadings contained in the body of the Answer, Plaintiff's Motion to Strike is **GRANTED** as to the Nineteenth, Twentieth, Twenty-First, and Twenty-Fifth Paragraphs, as well as Paragraph Three of the Prayer, but **DENIED** as to Paragraphs One, Thirteen, Fifteen, and Twenty-Seven. Moreover, Plaintiff's Motion to Strike is **GRANTED** as to the Second, Third, Fourth, Fifth, Eighth, Twelfth, Thirteenth, Fourteenth, Sixteenth, Seventeenth, Eighteenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Fourth Affirmative Defenses, but **DENIED** as to the First, Sixth, Seventh, Ninth, Tenth, Eleventh, Fifteenth, and Nineteenth Affirmative Defenses.

IT IS SO ORDERED.

DATED: June 14, 2001

Judge Gary Allen Feess
United States District Court

- 24 -